

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| T-NETIX, INC., § § *Plaintiff,* § § And § § COMMUNICATION EQUIPMENT & § ENGINEERING COMPANY, § § *Involuntary Plaintiff,* § § v. § § MCI WORLDCOM COMMUNICATIONS, INC. § and § GLOBAL TEL*LINK CORPORATION, § § *Defendants.* § | Civil Action No. 2-01 CV 189 DF Judge David V. Folsom **Jury Trial Requested** |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MARKMAN CLAIM CONSTRUCTION BRIEF FOR THE GAINESBORO '963 PATENT

As to several of the terms of the '963 Patent, Plaintiff proposes an improper construction. These improper constructions generally arise from two flaws in Plaintiff's reasoning. First, Plaintiff fails to apply the proper test for determining the meaning of a claim element that is expressed in the means-plus-function format. Second, Plaintiff ignores the intrinsic evidence provided by the '702 Patent document itself.

A. <u>T-Netix Improperly Construes "Speech Recognition Means"</u>

Claim 20 of the '963 Patent contains the following claim limitation:

> speech recognition means for monitoring said telephone conversations, said speech recognition means having means for activating a warning signal;

Beginning at paragraph 3 on page 10 of Plaintiff's MCC Brief, T-Netix refers to this claim 20 limitation by the shorthand notation "speech recognition means."

T-Netix proposes that the "speech recognition means" of claim 20 of the '963 Patent should be construed as:

> An automatic speech recognizer that is capable of monitoring telephone conversations and that is capable of activating a warning signal, and equivalents thereof.

For the reasons explained below, to construe the meaning of the "speech recognition means" in claim 20 as T-Netix requests, is incorrect as a matter of law. Briefly, the so-called "speech recognition means" must include the specific algorithm that is used by the microprocessor to perform the speech recognition.

T-Netix and Defendants agree that the so-called "speech recognition means" in claim 20 is written in means-plus-function format. This format imposes restrictions on the meaning that can be given to the "speech recognition means." Because this "speech recognition means" is written in the means-plus-function format, its meaning is limited to the exact structure that is disclosed in the '963 patent for performing the recited function or to known equivalents of that disclosed structure. <u>Valmont Industries, Inc. v. Reinke Mfg. Co.</u>, 983 F.2d 1039, 1042 (Fed. Cir. 1993). Accordingly, the first task in determining the proper construction of this "speech recognition means" is to identify the function that is being performed. And once the first task is done, then all that remains to

2

be done in order to determine the proper construction of this "speech recognition means" is to find the specific structure that the '963 Patent uses to perform the identified function. Medtronic, Inc. v. Advanced Cardiovascular Systems, Inc., 248 F.3d 1303, 1311 (Fed. Cir. 2001).

Turning to the first task, the recited function that is to be performed by the "speech recognition means" of claim 20 is revealed in the claim language itself. Accordingly, the function that is performed by the "speech recognition means" is "monitoring telephone conversations between said first telephone connection and said second telephone connection."

The next task in determining the meaning of the "speech recognition means" is to review the '963 Patent to find the specific structures that perform the "conversation monitoring" function that is identified above. The drawings and text of the '963 Patent are first reviewed for structures that are identified as performing the "conversation monitoring" function. This review leads to column 5, lines 39 - 50, of the '702 Patent, which reveals that (emphasis added):

> the inmate's call would be **monitored by the ASR software option 14** and may be stored via attached voice recorder 16 (optional). The **ASR option 14 would be monitoring for key words or phrases spoken during the conversation.** If a key word or phrase is picked up by the ASR option 14, event trigger 18 is activated, thereby initiating the remedial action desired by the correctional institution. Conversely, if there is an incoming call 10 for an inmate, the **incoming call 10 is routed through the call controller 12, where it would be monitored as described above, before connection to inmate phone 20.**
> . . .
> Given that ASR technology has key word or phrase quantity limits, **applicant has developed a switching protocol whereby when one key word or phrase is "heard", a subset or subcategory of key words is**

3

**accessed for further refinement of the identification process** of the violation or conversation in process.

On page 10 of T-Netix's MCC Brief, T-Netix acknowledges that the "speech recognition means" of claim 20 is a software module suitable for execution in a computer. At column 4, line 13, the '963 Patent defines "ASR to stand for the phrase "Automatic Speech Recognition." Hence, the ASR 14 depicted in FIG. 1 of the '963 Patent includes the automatic speech recognition software that runs on a microprocessor and includes at least "**a switching protocol whereby when one key word or phrase is 'heard', a subset or subcategory of key words is accessed for further refinement of the identification process.**"

The '963 Patent states that this **switching protocol** was specifically developed by the applicant of the '963 Patent for the speech recognition software required by the '963 Patent. However, neither the algorithms that compose the speech recognition software nor the algorithms that compose this **switching protocol**, are not disclosed anywhere in the '963 Patent. Yet the algorithms of this speech recognition software are the specific structures that must be disclosed in order to satisfy the requirement of the "means-plus-function" format for the "speech recognition means." WMS Gaming, Inc. v. International Game Technology, 184 F.3d 1339, 1348 (Fed. Cir. 1999).

In construing the means-plus-function element of a claim, the district court in the WMS Gaming decision properly found that the structure for carrying out the function was a microprocessor that was programmed to carry out an algorithm. This is a situation like the speech recognition software and the **switching protocol** that the applicant specifically developed for the speech recognition software, as both are required by the "speech recognition means" of the '963 Patent. However, the Court of Appeals ruled that

**"the [district] court erred by failing to limit the claim to the algorithm disclosed in the specification."** Id. Emphasis added.

In the present case, the '963 Patent fails to disclose the algorithms employed by the speech recognition software and **switching protocol** that the applicant specifically developed for the speech recognition software, though both are required by the "speech recognition means" of the '963 Patent. Without these algorithms, the Court cannot provide a lawful construction of the "speech recognition means" of claim 20. By asserting claim 20 of the '963 Patent, which fails altogether to provide the necessary disclosure of the required algorithms, T-Netix is attempting to force the Court to err by issuing a legally insufficient construction of the "speech recognition means." Indeed, without the required algorithms, the Court would be forced to interpret the claim as encompassing *any* software that accomplishes the stated function of speech recognition, which is precisely the sort of overbroad interpretation § 112, ¶ 6 was enacted to avoid. See Valmont, 983 F.2d at 1042.

Accordingly, the Court should declare claim 20 to be legally insufficient and therefore incapable of being properly construed. See In re Dossel, 115 F.3d 942, 946 (Fed. Cir. 1997) (claim containing a means-plus-function element will generally be held indefinite if the specification does not contain an adequate disclosure of structure corresponding to the function of the claim).

B. T-Netix Improperly Construes "Automatic Speech Recognizer"

Claims 1 through 19 of the '963 patent requires the presence of an "automatic speech recognizer." Beginning at paragraph 2 on page 9 of T-Netix's MCC Brief, T-

5

Netix improperly proposes to construe this claim term as including any "device that is capable of recognizing spoken words or phrases, either live or recorded." This is an improper construction.

Though it does not use the term "means," the phrase "automatic speech recognizer" should be construed according to § 112, ¶ 6 because it discloses nothing more than a function - that of recognizing speech - without identifying *any* structure to accomplish that function. Indeed, the phrase "automatic speech recognizer" is simply another way of saying "a device (or means) for recognizing speech." There is nothing in the claim language that hints at any specific structure for accomplishing this purpose. Under these circumstances, the phrase is subject to § 112, ¶ 6. See Mas-Hamilton Group v. LeGard, Inc., 156 F.3d 1206, 1214 (Fed. Cir. 1998).

Because "automatic speech recognizer" is subject to means-plus-function analysis, Defendants submit that it should be construed in the same fashion as described above for "speech recognition means." However, as explained in Defendants' opening brief, the prosecution history further estops T-Netix from any construction of "automatic speech recognizer" that does not involve "real time" monitoring of speech.

### C. T-Netix Improperly Construes "Call Control Means"

Claim 20 of the '963 Patent contains the following claim limitation:

> call control means for controlling the monitoring of
> telephone conversations between said first telephone
> connection and said second telephone connection;

Beginning at paragraph 5 on page 12 of Plaintiff's Markman Claim Construction Brief (hereafter Plaintiff's MCC Brief), T-Netix refers to this claim 20 limitation by the shorthand notation "call control means."

T-Netix proposes that the "call control means" of claim 20 of the '963 Patent should be construed as:

> A call control program and equivalents thereof.

For the reasons explained below, to construe the meaning of the "call control means" in claim 20 as T-Netix requests, is incorrect as a matter of law. Briefly, T-Netix ignores the functions that are to be carried out by the "call control means" and the configuration of the specific structures that carry out the functions in accordance with the '963 Patent.

T-Netix and Defendants agree that the so-called "call control means" in claim 20 is written in means-plus-function format. This format imposes restrictions on the meaning that can be given to the "call control means." Because this "call control means" is written in the means-plus-function format, its meaning is limited to the exact structure that is disclosed in the '963 patent for performing the recited function or to known equivalents of that disclosed structure. Valmont Industries, Inc. v. Reinke Mfg. Co., 983 F.2d 1039, 1042 (Fed. Cir. 1993). Accordingly, the first task in determining the proper construction of this "call control means" is to identify the function that is being performed. And once the first task is done, then all that remains to be done in order to determine the proper construction of this "call control means" is to find the specific structure that the '963 Patent uses to perform the identified function. Medtronic, Inc. v. Advanced Cardiovascular Systems, Inc., 248 F.3d 1303, 1311 (Fed. Cir. 2001).

Turning to the first task, the recited function that is to be performed by the "call control means" of claim 20 is revealed in the claim language itself. Accordingly, the function that is performed by the "call control means" is "controlling the monitoring of telephone conversations between said first telephone connection and said second telephone connection."

However, the remaining language in claim 20 clarifies how the "call control means" performs this "monitoring control" function. Claim 20 further states that (emphasis added): "said second telephone connection which is **routed through said call control means** to said first telephone connection." In order to be able to perform the "conversation monitoring" function, the "call control means" must have access to the inmate's telephone call. Thus, the "call control means" provides the route through which the inmate's telephone is connected to the telephone of the party that the inmate is calling. This is a "call routing" function.

Additionally, claim 20 states that (emphasis added): "wherein **said call control means uses said speech recognition means** to search said telephone conversation for key words or phrases." Thus, the "call control means" then uses the speech recognition means to monitor that inmate's telephone call. This is the "speech recognition control" function.

The next task in determining the meaning of the "call control means" is to review the '963 Patent to find the specific structures that perform the two "monitoring control" functions that are identified above. The drawings and text of the '963 patent are first reviewed for structures that are identified as performing the "call routing" function that is noted above. This review reveals that Fig. 1 of the '963 patent depicts several

rectangular boxes designated by the number 20 and surrounding the words "INMATE PHONE." Fig. 1 of the '963 patent also depicts a rectangular box designated 12 and surrounding the words "CALL CONTROLLER." The rectangular box surrounding the words "INCOMING AND OUTGOING CALLS" is designated by the number 10. As shown schematically by the solid straight lines with arrowheads on each end and connecting each INMATE PHONE 20 with the CALL CONTROLLER box labeled 12, the connections made to the inmate phones must be routed through the CALL CONTROLLER. This is also confirmed in the text of the '963 patent at column 5, lines 35-38 as follows (emphasis added):

> As shown in FIG. 1, inmates would initiate an outgoing phone call from inmate phone 20. The inmate's call could then be **routed through call controller 12** before completion of the call to outgoing call 10 and the telephone company.

This passage of the '963 Patent identifies the call controller 12 as the device that provides the route through which the inmate's telephone is connected to the telephone of the party that the inmate is calling. This "call routing" is one of the functions that the "call control means" must perform. Hence, the call controller 12 performs the "call routing" part of the functionality of the "call control means" of claim 20.

The second part of the functionality of the "call control means" of claim 20 is the "speech recognition control" function. In searching for how the '963 Patent goes about performing the "speech recognition control" function, resort is had to Fig. 1, which is the only drawing in the '963 Patent. As explained at column 4, lines 52-56 (emphasis added):

> Fig. 1 shows a schematic representation of the method and apparatus of the present invention, more

> specifically the **integration of automatic speech recognition technology into applicant's call controller technology** for the specific use in the corrections industry.

Based on this passage of the '963 Patent, it appears that the "speech recognition control" function of the "call control means" is somehow integrated into the call controller.

This conclusion is supported by the configuration of the drawing in Fig. 1. Attached to one side of the CALL CONTROLLER box labeled 12 in Fig. 1 of the '963 Patent is a rectangular box designated 14 and surrounding the acronym "ASR." The text of the '963 Patent at column 4, line 13 defines "ASR" to mean "automatic speech recognition." As shown schematically in Fig. 1 by the adjacent location of the automatic speech recognition 14 relative to the CALL CONTROLLER 12, the automatic speech recognizer is used by the CALL CONTROLLER to monitor the inmate's outgoing telephone call.

This conclusion is also confirmed in the text of the '963 patent at column 5, lines 39-40 as follows:

> At call controller 12, the inmate's call would be monitored by the ASR software option 14 . . . .

Plaintiff's expert, Mr. McAlexander, also relies on this passage in page A-a2 of his claim chart submitted as Plaintiff's evidence for the meaning of the "call controller."

This conclusion likewise is confirmed in the text of the '963 patent at column 4, lines 11-16 as follows (emphasis added):

> The solution posed by the present invention is to apply speaker-independent, continuous speech, multilingual, multidialect, **Automatic Speech Recognition (ASR)** technology to the problems described above. In particular, **applicant integrates the ASR technology into its own Call Control product.** . . .

Hence, the call controller 12 must use the automatic speech recognizer to monitor the inmate's telephone call. This is the "speech recognition control" function, which is the second function that the "call control means" must perform. Thus, the '963 Patent explicitly discloses that the call controller 12 performs the required functions of the "call control means."

Now that the functions that are performed by the call controller 12 have been determined above, it becomes necessary to determine the specific structures that the '963 Patent provides for implementing these functions.

Beginning at paragraph 4 on page 11 of Plaintiff's MCC Brief, T-Netix proposes that the "call controller" of claims 1 and 5 of the '963 Patent should be construed as:

> A device through which calls are routed between a telephone network and at least one inmate phone.

For the reasons explained above, this construction proposed by T-Netix completely omits the "speech recognition control" function that is performed by the call controller. To construe the meaning of the "call controller" as T-Netix requests, is therefore incorrect as a matter of law.

The search for the specific structures that do what is required of the call controller and hence the "call control means" leads to column 5, lines 7 - 29, of the '702 Patent, which explains that (emphasis added):

> The present invention is envisioned to be built as a **buss compatible plug in board for IBM PC type platforms. Each card will contain a 30 channel TI interface with "T" logic for each channel.** "T" logic, is the ability to take a single signal and direct it to 2 different locations simultaneously without attenuation of the signal. **One side of the "T" will be used to pass the signal to the network. The other side of the "T" will be used to pass the signal to a recording device or other event driven process.** The

> "T" switch will be capable of being configured as an open line (no signal passes), a straight through line (signal is passed directly through with no split out) and as a "T" stated above. **Each of the lines is digitized and processed by the equivalent of a Digital Signal Processor, one per line.** This type of intelligence will allow each processor to run the Voice Recording Devices according to defined and predefined patterns.
> **Said "T"'s will be configured as to what state to be in at any particular time via a control program which runs on a host PC.** Such a control program can select lines to be monitored on a predefined rotation basis, from a stored table of selections or on a random basis.
> The product would be integrated as a software module option (ASR Option) in the applicant's call control system.

The above disclosure of the '702 Patent explains that the call controller includes a buss compatible plug-in board for IBM PC type platforms wherein each channel of the card will have "T" logic. The call controller also requires a program that runs on a host PC. This software program controls whether a particular "T" will be in the state where no signal is allowed to pass, or a state where the signal is allowed to pass (and thus the call is connected) or a state where the signal is diverted for purposes of monitoring. The control program can select lines to be monitored by the ASR module that would be software running on the controller. This explanation of the '963 Patent fairly well encompasses all of the components that are necessary for the call controller to perform the noted functions of "call routing" and "speech recognition controlling" that are required of the "call control means" of claim 20 of the '963 Patent. Moreover, Plaintiff's MCC Brief at page 11 under the heading "*Intrinsic Evidence*," essentially agrees that these structures form at least the part of the specific structures that constitute the "call routing" features of the call controller.

In view of the foregoing analysis, the proper construction of the "call control means" of claim 20 of the '963 Patent includes a microprocessor running an IBM PC type platform and a buss compatible plug-in board having multiple channels with "T" logic. The "call control means" also must include a first software program that runs on the microprocessor and controls each channel of the buss. The "call control means" also must be integrated with and be able to use an automatic speech recognition program that runs on the microprocessor. Anything less, fails to satisfy the claim construction requirements that govern a claim element that is expressed in the means-plus-function format.

Moreover, this claim construction of the "call control means" reveals a fatal flaw in the disclosure of the '963 Patent. The first program that controls the switching and uses the speech recognition program, is not disclosed anywhere in the '963 Patent. This algorithm that composes this first program is a specific structure that must be disclosed in order to satisfy the requirement of the "means-plus-function" format for the "call control means." WMS Gaming, Inc. v. Intenational Game Technology, 184 F.3d 1339, 1348 (Fed. Cir. 1999).

The WMS Gaming decision involved construction of a patent claim's phrase that was expressed in the means-plus-function format. The district court properly found that the structure for carrying out the function was a microprocessor that was programmed to carry out an algorithm such as the undisclosed software program that is one of the structures required by the "call control means" of the '963 Patent. However, the Court of Appeals ruled that "**the [district] court erred by failing to limit the claim to the algorithm disclosed in the specification.**" Id. Emphasis added.

In the present case, the '963 Patent fails to disclose the algorithms employed by the software required by the "call control means" of the '963 Patent. Without these algorithms, the Court cannot provide a lawful construction of the "call control means" of claim 20. By asserting claim 20 of the '963 Patent, which fails altogether to provide the necessary disclosure of the required algorithms, T-Netix is attempting to force the Court to err by issuing a legally insufficient construction of the "call control means," which is presented in the means-plus-function format. Accordingly, the Court should declare claim 20 to be legally insufficient and therefore incapable of being properly construed.

### D. T-Netix Improperly Construes "Call Controller"

Claims 1 and 5 of the '963 Patent recite the following claim limitation:

> a call controller;

Because this limitation appears in claim 1 and because each of claims 2-19 depends ultimately from claim 1, this "call controller" is a limitation of each of claims 1-19.

Beginning at paragraph 4 on page 11 of Plaintiff's MCC Brief, T-Netix proposes that the "call controller" of claims 1-19 of the '963 Patent should be construed as:

> A device through which calls are routed between a telephone network and at least one inmate phone.

As explained above, the proper construction of the "call controller" of claims 1-19 of the '963 Patent includes a microprocessor running an IBM PC type platform and a buss compatible plug-in board having multiple channels with "T" logic. The "call controller" also must include a first program that runs on the microprocessor and controls each channel of the buss. The "call controller" also must be integrated with an automatic speech recognition program that runs on the microprocessor.

Thus, the construction proposed by T-Netix is deficient because it fails to require the "call controller" to be integrated with an automatic speech recognition program that runs on the microprocessor. Moreover, evidence of this deficiency in T-Netix's proposed construction is provided by page A-a2 of Mr. McAlexander's claim chart, which quoted the following passage from column 5, lines 39-40 of the '963 Patent as intrinsic evidence of the proper construction of the "call controller":

> At call controller 12, the inmate's call would be monitored by the ASR software option 14 . . . .

Thus, the construction proposed by T-Netix fails to comport with what its own expert asserts to be evidence of the proper construction of the "call controller."

Respectfully Submitted,

Date: 6-25-02

Richard M. Moose
*Attorney-in-Charge*
S.C. State Bar No. 6453
e-mail: rmm@dority-manning.com
DORITY & MANNING
ATTORNEYS AT LAW, P.A.
Post Office Box 1449
Greenville, South Carolina 29602
Telephone:   (864) 271-1592
Facsimile:   (864) 233-7342

*Attorney for the Defendants
MCI WorldCom Communications, Inc.
and
Global Tel*Link Corporation*

OF COUNSEL:

J. Michael Bradford
BENCKENSTEIN & OXFORD, L.L.P.
3535 Calder
P.O. Drawer 150
Beaumont, Texas 77704
Telephone:   (409) 833-9182
Facsimile:   (409) 833-8819

Alan D. Rosenthal
Jonathan P. Osha
Louis K. Bonham
Robert P. Lord
Rosenthal & Osha l.l.p.
One Houston Center, Suite 2800
1221 McKinney Street
Houston, Texas 77010
Telephone:   (713) 228-8600
Facsimile:   (713) 228-8778

Julian W. Dority
Jeffrey M. Karmilovich
James M. Bagarazzi
DORITY & MANNING
ATTORNEYS AT LAW, P.A.
Post Office Box 1449
Greenville, South Carolina 29602
Telephone:   (864) 271-1592
Facsimile:   (864) 233-7342

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing DEFENDANTS' RESPONSE TO PLAINTIFF'S MARKMAN CLAIM CONSTRUCTION BRIEF FOR THE GAINESBORO '963 PATENT was served on the Plaintiff by sending a copy via Federal Express addressed to the Plaintiff's counsel of record as follows:

> Douglas A. Cawley, Esquire
> Theodore Stevenson, III, Esquire
> Christopher Bovenkamp, Esquire
> MCKOOL SMITH
> 300 Crescent Court, Suite 1500
> Dallas, TX 75201
> Facsimile: 214-978-4044

on  6-25-02

_____
Attorney for the Defendants

MCI WorldCom Communications, Inc.
*and*
Global Tel*Link Corporation